1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                         **WESTERN DIVISION**

11

12  PAUL K. DUFFY,                    )      No. SACV 04-823 (CW)
                                      )
13              Plaintiff,            )      DECISION AND ORDER
             v.                       )
14                                    )
    JO ANNE B. BARNHART,              )
15  Commissioner, Social Security    )
    Administration,                   )
16                                    )
                Defendant.            )
17  _____ )

18

19       The parties have consented, under 28 U.S.C. § 636(c), to the

20  jurisdiction of the undersigned magistrate judge.  Plaintiff seeks

21  review of the decision that he is ineligible for supplemental security

22  income ("SSI") benefits and that he was overpaid $15,747.80.  The

23  court finds that judgment should be granted in favor of defendant,

24  affirming the Commissioner's decision.

25                         **I.  BACKGROUND**

26       Plaintiff Paul K. Duffy was born on November 17, 1918, and was 84

27  years old at the time of his administrative hearing.  He sought

28  supplemental security income ("SSI") benefits in 1999 on the basis of

                                    1

1  his advanced age and limited income.

2  ## II.   PROCEEDINGS IN THIS COURT

3       Plaintiff's pro se complaint was lodged on July 8, 2004, and

4  filed on July 15, 2004.  On October 20, 2004, defendant filed

5  plaintiff's Administrative Record ("AR").  On February 4, 2005,

6  plaintiff filed a motion for summary judgment.  On April 6, 2005,

7  defendant filed a cross-motion for summary judgment and an opposition.

8  On April 19, 2005, plaintiff filed a response to defendant's motion

9  for summary judgment.  This matter has been taken under submission

10  without oral argument.

11  ## III.   PRIOR ADMINISTRATIVE PROCEEDINGS

12       Plaintiff applied for supplemental security income ("SSI") on

13  July 21, 1999, and again on October 25, 1999, alleging eligibility for

14  SSI based on his age and limited income. [AR 40, 51.]  Plaintiff was

15  awarded benefits in November 1999. [AR 13.]  The Social Security

16  Administration ("Administration") subsequently became aware that

17  plaintiff had resources in excess of the limit for SSI eligibility.

18  [AR 84.]  Plaintiff's benefits were stopped effective November 2002,

19  and plaintiff was charged with an overpayment of benefits in the

20  amount of $15,747.80. [AR 120, 124.]  Plaintiff appealed. [AR 121.]

21  An administrative hearing was held on June 4, 2003, before

22  Administrative Law Judge ("ALJ") Charles E. Stevenson.  [Transcript,

23  AR 147.]  Plaintiff appeared without counsel and gave testimony. [Id.]

24  The ALJ found that plaintiff was ineligible for SSI based on excess

25  resources and was overpaid benefits in the amount of $15,747.80.

26  [Decision, AR 17.]  When the Appeals Council denied review on May 24,

27  2004, the ALJ's decision became the Commissioner's final decision.

28  [AR 4.]

1

### IV.   STANDARD OF REVIEW

2       Under 42 U.S.C. § 405(g), a district court may review the

3  Commissioner's decision to deny benefits.  The Commissioner's (or

4  ALJ's) findings and decision should be upheld if they are free of

5  legal error and supported by substantial evidence.  However, if the

6  court determines that a finding is based on legal error or is not

7  supported by substantial evidence in the record, the court may reject

8  the finding and set aside the decision to deny benefits.  See Aukland

9  v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.

10 Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240

11 F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,

12 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

13 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada

14 v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

15      "Substantial evidence is more than a scintilla, but less than a

16 preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence

17 which a reasonable person might accept as adequate to support a

18 conclusion."  Id.  To determine whether substantial evidence supports

19 a finding, a court must review the administrative record as a whole,

20 "weighing both the evidence that supports and the evidence that

21 detracts from the Commissioner's conclusion."  Id.  "If the evidence

22 can reasonably support either affirming or reversing," the reviewing

23 court "may not substitute its judgment" for that of the Commissioner.

24 Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

25                        ### V.   DISCUSSION

26      Federal law permits the Commissioner to adjust benefit payment

27 amounts if a recipient of SSI benefits receives more or less than the

28 amount actually due.  See 42 U.S.C.A. §§ 404, 1383(b); 20 C.F.R. §

3

416.535.  An overpayment occurs when a recipient receives more than the correct amount due for any given period.  20 C.F.R. §§ 404.501, 416.537.  If an SSI recipient has excess resources that are not reported to the Commissioner, the claimant may receive an erroneous overpayment.  20 C.F.R. § 416.1205.  The Administration is required to send notice to anyone against whom it intends to effect recovery or adjustment, including claimants and representative payees.  20 C.F.R. § 416.558(a).  That notice must inform such individuals of their right to request waiver of the recovery or adjustment.[1]  Id.  The Administration has the burden of proving both the fact and the amount of overpayment.  McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).

## A.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

When plaintiff applied for SSI benefits in July 1999, he listed as his only resources a 1986 Plymouth Sun Dancer worth $400 and a checking account balance of $50. [AR 41.]  When he filed a second application in October 1999, he listed as his only resources a 1986 Cadillac El Dorado worth $1,000 and a checking account balance of $25. [AR 52.]  What plaintiff failed to mention in his applications was that he was both the trustee and beneficiary of a trust, which he inherited from his mother, that was worth approximately $580,000 upon her death in 1989 and distributed to plaintiff in 1992.[2] [AR 26-31.] At the time plaintiff filed his SSI applications, the value of the

---

[1]  The record does not show that plaintiff has sought waiver of recovery of the overpayment.

[2]  The assets of the trust included $22,760.36 in cash and several pieces of real property in Riverside and Orange Counties. [AR 30-31.]

4

1  trust was unclear.  When asked about the trust, plaintiff alleged that

2  he had depleted all of the assets in the trust by the time he filed

3  his SSI application in 1999. [AR 80, 151.]

4      The ALJ found plaintiff not credible and that during the period

5  in which plaintiff was receiving SSI benefits, he had "countable

6  resources" that exceeded the maximum limit for SSI recipients.

7      **B.  PLAINTIFF'S PRESENT CLAIMS**

8      Plaintiff's challenges to the ALJ's decision, as presented in his

9  motion for summary judgment, can be distilled to two issues:

10     1.   Whether the written notice informing plaintiff of the
            cessation of his benefits violated his due process rights;
11          and

12     2.   Whether overpayment has occurred.

13     [Plaintiff's Brief, 2-4.]

14     **C.  DUE PROCESS**

15     On September 27, 2002, the Social Security Administration sent a

16 letter to plaintiff notifying him that he was found not eligible for

17 SSI benefits as of November 1, 1999. [AR 124-134.]  Plaintiff argues

18 that the resulting cessation of his SSI benefits violated his due

19 process rights because he received no notice "of any charges or

20 proposed action" prior to the action. [Plaintiff's Brief, p. 2.]

21     The Administration is required to send notice to anyone against

22 whom it intends to effect recovery or adjustment, including claimants

23 and representative payees.  20 C.F.R. § 416.558(a).  The record shows

24 that on February 6, 2002, the Administration sent plaintiff a letter

25 informing him that more information was needed to determine whether

26 "we can continue to pay you SSI." [AR 86.]  Plaintiff complied with

27 the request by providing additional information, including a copy of

28 the Nona Keen Duffy Trust, on March 3, 2002. [AR 91.]  On April 5,

5

1    2002, the Administration returned the documents after making copies

2    and advised him in writing that he could contact the Administration if

3    he had any further questions. [AR 90.]  Based on these facts,

4    plaintiff received more than adequate notice that the Administration

5    was re-evaluating his eligibility for SSI benefits, and he was

6    provided with an opportunity to provide documentation supporting his

7    position that he was eligible for SSI benefits.  There was no due

8    process violation.

9         **D.   OVERPAYMENT**

10        The supplemental security income program ("SSI") is intended to

11   provide financial assistance to "needy people" who are blind,

12   disabled, or 65 years of age or older. Social Security Act, § 1601 [as

13   amended 42 U.S.C.A. § 1381]; <u>Hart v. Bowen</u>, 799 F.2d 567, 569 (9th

14   Cir. 1986).  An unmarried individual (such as plaintiff) is ineligible

15   for SSI benefits if he has non-excludable resources worth more than

16   $2,000.  20 C.F.R. § 416.1205.

17        When plaintiff applied for and received SSI benefits in 1999, he

18   failed to mention that seven years earlier, he assumed control over

19   the Nona Keen Duffy Trust, which was worth more than $580,000.  [AR

20   26-31.]  During a redetermination of plaintiff's eligibility in June

21   2000, he again failed to reveal the trust. [AR 67-68.]  In late 2001,

22   the Administration learned of the existence of the trust when tax

23   records showed plaintiff had won $17,861 at the Del Mar Thoroughbred

24   Club on behalf of the trust. [AR 65.]  When asked about these

25   omissions, plaintiff alleged that the race track winnings had been

26   "lost back" to the track, that he had depleted all of the assets in

27   the trust by the time he filed his SSI application in 1999, and that

28   he agreed to give up all rights to the trust. [AR 80, 151, 152.]

1     The ALJ found plaintiff's allegations not credible and that the
2  trust principle was a "countable resource" whose value exceeded the
3  $2,000 tolerance limit during the period of November 1999 to October
4  2002, when plaintiff received SSI benefits. [AR 15.]  It was noted
5  that plaintiff was the sole trustee and had full discretion in using
6  the trust principal. [Id.]  For example, plaintiff admitted to
7  "borrowing" $245,000 from the trust for his personal use but that he
8  had no obligation to repay the amount. [Id.]  The ALJ found that
9  plaintiff failed to provide documentation of large expenditures that
10  purportedly depleted the trust, such as the whereabouts of $440,000 he
11  borrowed on the properties before they were sold (plaintiff claimed
12  that he spent $300,000 to develop some of the property, but there is
13  no corroborating documentation). [AR 16.]  The ALJ conjectured that
14  absent documentary evidence, some or all of the money borrowed against
15  the real property was retained, invested elsewhere and still exists.
16  [Id.]  More concretely, the ALJ cited documentary evidence that the
17  trust portfolio was worth at least $1,981.33 as of December 2001. [AR
18  17.]  Combined with a 10-acre parcel that was worth $919 and $4,428.80
19  that plaintiff netted in a stock sale in September 2001, plaintiff's
20  countable resources were found to exceed $2,000.

21     Under these circumstances, the ALJ's decision was supported by
22  substantial evidence.  The documentary record clearly establishes that
23  plaintiff had excess resources that rendered him ineligible for SSI
24  benefits.  Although some of the evidence appears to support
25  plaintiff's contention that the trust assets were significantly
26  depleted by the time he filed his SSI application in July 1999, the
27  records nonetheless show that plaintiff had access to resources worth
28  at least $2,000 for most, if not all, of the relevant period of

7

November 1999 to October 2002.[3]

Documents show that in August 2001, the trust's stock portfolio was valued at $4,428.80. [AR 109.]  In addition, although plaintiff eventually sold most of the real property in the trust, during the relevant period, the trust still owned a 10-acre parcel in Indio that was valued at $919. [AR 92.]  In September 2001, some of the trust's stock was sold, netting $4,428.16, which is no longer accounted for. [AR 111.]  As of December 2001, the trust's stock portfolio was worth $1,981.33. [AR 112.]  Records of these transactions establish that plaintiff had, for at least the majority of the relevant period, excess resources that made him ineligible for SSI benefits.

On the other hand, the records also raise the issue of whether plaintiff's assets remained above the $2,000 threshold during the entire period of November 1999 to October 2002.  As of January 2002, for example, the trust's stock portfolio was worth only $714.02. [AR 112.]  As of April 2002, that amount had decreased to $2.44. [AR 113.]  As the ALJ noted, however, the value of the trust is unclear only because the plaintiff was not forthcoming about producing documentation regarding the assets. [AR 16.]  Plaintiff's allegation that the trust was depleted because he spent $300,000 on redeveloping some of the real property remains undocumented. [AR 16.]  Further, plaintiff has not explained what became of the $4,428.16 that the trust netted from the sale of stock in September 2001. [Id.]  Plaintiff has contended on multiple occasions that any funds that

_____
[3]   In November 1998, eight months before filing his SSI application, plaintiff sold one of the properties for $424,227.50, which netted $4,000 in cash and a note worth $67,409.15. [AR 93.]  In December 1998, plaintiff sold another property for $225,000 and netted $11,673.02 from the sale, which plaintiff stated was used for living expenses. [AR 34.]

1  "disappeared" were used for the permissible purpose of paying for his

2  living expenses, but there is no presumption in the Ninth Circuit that

3  money not accounted for is expended.  Hudson v. Bowen, 849 F.2d 433,

4  435 (9th Cir. 1988).  In the absence of any documentation, plaintiff's

5  claims cannot be credited.  Id. at 434 ("[I]n determining whether a

6  claimant has spent or retained excess resources, an ALJ must be free

7  to disregard self-serving statements that cannot be verified").

8      Plaintiff further argues that any funds he took from the trust

9  were merely "loans" that cannot be counted as an excess resource.

10 [Plaintiff's Brief, p. 3.]  Under the regulations, money that is

11 borrowed is not considered income for the purpose of SSI eligibility.

12 20 C.F.R. § 416.1103(f).  The ALJ's decision, however, pointedly made

13 a distinction between "income" and "countable resources" and

14 determined that plaintiff's "ineligibility is due to his having

15 countable resources (the trust principal) in excess of the tolerance

16 limit of $2,000, rather than because of income from the trust." [AR

17 15.]  The trust was a resource to plaintiff because, by his own

18 admission, he was the only one who had access to the funds, there were

19 no restrictions on the amount or use of the funds accessed, and he was

20 the only one with power to terminate the trust.[4] [AR 77.]  Gordon v.

21 Secretary of Health and Human Services, 803 F.2d 1071, 1073 (9th Cir.

22 1986)(where "the arrangements [of a trust] are revocable at the will

23 of the depositor or where the depositor takes total control over

24 funds, the funds will be considered resources for purposes of

25

26      [4]  Plaintiff's unrestricted access to the trust belies his
   argument that he executed an "agreement" to receive no more funds from
27 the trust before filing his application for SSI benefits. [Plaintiff's
   Brief, p. 2.]  However, the record contains no evidence of such an
28 agreement, other than plaintiff's own statements. [AR 80.]

1   determining SSI eligibility"). The ALJ further explained that if the

2   trust principal is a countable resource to the individual,

3   disbursements from the trust are considered a conversion of a

4   resource, not income. [Id.] Because the ALJ did not determine that

5   plaintiff was ineligible for SSI based on "income," plaintiff's

6   argument that he merely took "loans" from the trust, rather than

7   income, is immaterial. Based on these circumstances, the ALJ's

8   decision that plaintiff was not eligible for SSI benefits was

9   supported by substantial evidence.

10                              **V.   ORDERS**

11          Accordingly, **IT IS ORDERED** that:

12          1.   The decision of the Commissioner is **AFFIRMED**.

13          2.   This action is **DISMISSED WITH PREJUDICE**.

14          3.   The Clerk of the Court shall serve this Decision and Order

15   and the Judgment herein on all parties or counsel.

16

17   DATED: January 13, 2006

18                              ___/s/_____
                                   CARLA M. WOEHRLE
19                              United States Magistrate Judge

20

21

22

23

24

25

26

27

28

                                     10